IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| RALPH A. TAWNEY | * | |
| Plaintiff | * | |
| v. | * | Civil Action No. PWG-15-215 |
| PATRICIA JOHNSON, et al. | * | |
| Defendants | * | |
| | *** | |

## MEMORANDUM OPINION

Plaintiff Ralph A. Tawney filed a 42 U.S.C. § 1983 claim against Defendants Joseph Ebbitt and Patricia Goins-Johnson,[1] claiming that Defendants withheld surgery for his hernia, in violation of his civil rights. Compl., ECF No. 1. Ebbitt and Johnson filed Motions to Dismiss or for Summary Judgment, ECF Nos. 8 and 13, and, although Plaintiff was advised of his right to file an opposition to each motion and of the consequences of failing to do so, ECF Nos. 10 and 14, he has filed nothing further in the case. For the reasons stated below, Defendants' motions, treated as motions for summary judgment, shall be granted and judgment shall be entered in their favor.

### Plaintiff's Allegations

Tawney is an inmate committed to the custody of the Maryland Department of Public Safety and Correctional Services and confined at Patuxent Institution ("Patuxent"). He claims that since March of 2013, he has suffered from pain caused by a hernia for which required surgery has been denied. He states that the pain he suffers makes it difficult to walk to and from

---

[1] Tawney identified Defendants as Joe Ebbitt and Patricia Johnson. They refer to themselves as Joseph Ebbitt and Patricia Goins-Johnson. I will use the names that Defendants themselves use.

the dining hall or to climb the four flights of stairs he is required to climb daily. Compl. 5. As best I can discern, Plaintiff alleges that the failure to provide surgery is cruel and unusual punishment in violation of the Eighth Amendment.[2]

## Standard of Review

Defendants both move to dismiss or, alternatively, for summary judgment. *See* Ebbitt Mot. 1; Goins-Johnson Mot. 1.

> Where a defendant files a motion styled as one to dismiss or, in the alternative, for summary judgment, it "implicates the court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure." *See Sager v. Hous. Comm'n*, 855 F. Supp. 2d 524, 542 (D. Md. 2012). Pursuant to Rule 12(d), where "matters outside the pleadings are presented to and not excluded by the court," a motion to dismiss must be treated as one for summary judgment and all parties must be given an opportunity to present evidence on their behalf. Fed. R. Civ. P. 12(d). Styling a motion as one to dismiss or, in the alternative, for summary judgment is sufficient to provide notice to all parties that the motion may be converted to one for summary judgment. *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 260–61 (4th Cir. 1998).

*Strothers v. City of Laurel, Md.*, No. PWG-14-3594, --- F. Supp. 3d ----, 2015 WL 4578051, at *4 (D. Md. July 27, 2015). Both defendants have presented affidavits that I will consider along with their motions. Therefore, I will treat their motions as motions for summary judgment. *See id.*

Summary judgment is proper when the moving party demonstrates, through "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials," that "there is no genuine dispute as to any material fact and the movant is

---

[2] Plaintiff is proceeding *pro se*, and his Amended Complaint is to be construed liberally. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972). However, liberal construction does not absolve Plaintiff from pleading plausible claims. *See Holsey v. Collins*, 90 F.R.D. 122, 128 (D. Md.1981) (citing *Inmates v. Owens*, 561 F.2d 560, 562–63 (4th Cir. 1977)).

2

entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), (c)(1)(A); *see Baldwin v. City of Greensboro*, 714 F.3d 828, 833 (4th Cir. 2013). If the party seeking summary judgment demonstrates that there is no evidence to support the nonmoving party's case, the burden shifts to the nonmoving party to identify evidence that shows that a genuine dispute exists as to material facts. *See Celotex v. Catrett*, 477 U.S. 317 (1986). The existence of only a "scintilla of evidence" is not enough to defeat a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986). Instead, the evidentiary materials submitted must show facts from which the finder of fact reasonably could find for the party opposing summary judgment. *Id.*

### Eighth Amendment Claim

The Eighth Amendment prohibits "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. *Gregg v. Georgia*, 428 U.S. 153, 173 (1976). "Scrutiny under the Eighth Amendment is not limited to those punishments authorized by statute and imposed by a criminal judgment." *De'Lonta v. Angelone*, 330 F. 3d 630, 633 (4th Cir. 2003) (*citing Wilson v. Seiter*, 501 U.S. 294, 297 (1991)). In order to state an Eighth Amendment claim for denial of medical care, a plaintiff must demonstrate that the actions of the defendants or their failure to act amounted to deliberate indifference to a serious medical need. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner plaintiff was suffering from a serious medical need and that, subjectively, the prison staff were aware of the need for medical attention but failed to either provide it or ensure the needed care was available. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Objectively, the medical condition at issue must be serious. *See Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (there is no expectation that prisoners will be provided with

3

unqualified access to health care). Proof of an objectively serious medical condition, however, does not end the inquiry.

The subjective component requires "subjective recklessness" in the face of the serious medical condition. *See Farmer*, 511 U.S. at 839–40. "True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk." *Rich v. Bruce*, 129 F. 3d 336, 340 n. 2 (4th Cir. 1997). "Actual knowledge or awareness on the part of the alleged inflicter . . . becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" *Brice v. Va. Beach Corr. Ctr.*, 58 F. 3d 101, 105 (4th Cir. 1995) (quoting *Farmer*, 511 U.S. at 844). If the requisite subjective knowledge is established, an official may avoid liability "if [he] responded reasonably to the risk, even if the harm was not ultimately averted." *See Farmer*, 511 U.S. at 844. Reasonableness of the actions taken must be judged in light of the risk the defendant actually knew at the time. *See Brown v. Harris*, 240 F. 3d 383, 390 (4th Cir. 2000) (citing *Liebe v. Norton*, 157 F. 3d 574, 577 (8th Cir. 1998) (focus must be on precautions actually taken in light of suicide risk, not those that could have been taken)).

**Analysis**

Defendant Joe Ebbitt asserts that the Complaint against him must be dismissed because it fails to state any specific claim against him. Ebbitt Mem. 5, ECF No. 8-1. Additionally, he offers evidence, by way of his affidavit, that he is not a medical provider and does not participate in the treatment of inmates, nor does he control or direct clinical judgments made by medical providers who treat Tawney. Ebbitt Aff. ¶ 2, Ebbitt Mem. Ex. 1, ECF No. 8-2. To the extent that Tawney claims that he has been denied surgery to save on medical costs, Ebbitt states in his affidavit that his position as Director of Risk Management, HIPAA Compliance, and Legal

Affairs for Wexford Health Sources, Inc., does not include approving or denying surgery. *Id.* ¶ 3. Absent any evidence of Ebbitt's personal involvement in Tawney's medical care or decisions as to whether his condition requires surgery, there is no basis for finding Ebbitt liable for any failure to treat Tawney's condition. *See Estelle v*, 429 U.S. at 106. Summary judgment in Ebbitt's favor is appropriate. *See* Fed. R. Civ. P. 56(a).

Defendant Patricia Goins-Johnson, the former warden of Patuxent, asserts that she has "not delayed, hindered or interfered with [Tawney's] medical care" during her tenure as warden. Goins-Johnson Aff. ¶ 3, Goins-Johnson Mem. Ex. A, ECF No. 13-2. She further states that in her capacity as warden, she "relied upon the medical expertise" of the "private health care contractors to provide medical care" to all inmates including Tawney. *Id.* Goins-Johnson provides medical records pertaining to the assessment and treatment of his right inguinal hernia. Goins-Johnson Mot. Ex. B, ECF No. 13-3. Those records establish the following course of care for Tawney's hernia.

On March 11, 2013, Tawney was initially assessed by nurse practitioner Janet Mijere, who noted that he had his bladder removed in 2011 and suffered from numerous medical conditions including COPD, vascular disease, and a right inguinal hernia. Med. Recs. 1. Tawney's hernia resulted from the bladder resection. *Id.* at 12. Tawney informed Mijere that he might need surgery to repair the hernia, but Mijere noted he was "not a good historian," as he could not recall previous medical treatments accurately. *Id.* at 1. In other encounters with medical staff between August 9, 2013 and January 20, 2014, it was noted that Tawney's hernia was "reducible with discomfort." *Id.* at 4–10. When surgery was considered on September 11, 2013, medical records from Johns Hopkins were reviewed and it was determined that Tawney

had risk factors for a stroke with anesthesia, making surgical repair too risky in light of the fact that the hernia was "easily reducible" at that time. *Id.* at 6.

By August 5, 2014, Tawney's hernia was described as "large" and he reported it was painful, making walking any distance difficult because of the pain and pressure at the site. *Id.* at 12. Tawney requested a cane to assist with walking, but his request was denied because walking with a cane would not relieve the pain he was experiencing. *Id.*

On February 12, 2015, Tawney informed nurse practitioner Oladipo Olaleye that the pain from the hernia was causing him pain at a 7 out of 10 scale of pain. *Id.* at 17–18. The exam revealed a mild protrusion, and an attempt to reduce the hernia was unsuccessful, even though the hernia still was described as "reducible." *Id.* At this time a consultation for surgery to the hernia was prepared and an order for a hernia belt was written. *Id.* The hernia was described as "not reducible" as of March 9, 2015. *Id.* at 20, 22. On May 19, 2015, Tawney received the consultation for hernia repair surgery and the surgeon, Dr. Aggrwal, recommended a "herniorrhaphy with mesh." *Id.* at 27. On June 22, 2015, Tawney was seen for purposes of taking pre-operative history and conducting a physical exam. *Id.* at 28.

It is clear from the undisputed records that Tawney has received constitutionally adequate medical care for the treatment of his hernia and that any delay that occurred was due to legitimate medical concerns, i.e., the risk of stroke. Thus, there was no deliberate indifference to Tawney's serious medical needs. *See Estelle*, 429 U.S. at 106. Moreover, there is no evidence that Goins-Johnson was in any way involved in Tawney's care or decisions made to treat the hernia surgically or through more conservative measures. Therefore, any deliberate indifference is not attributable to Goins-Johnson. *See id.* Accordingly, Goins-Johnson is entitled to summary judgment in her favor. *See* Fed. R. Civ. P. 56(a).

A separate order follows.

_____                    _____
1/20/15                          Paul W. Grimm
Date                             United States District Judge